UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTHONY B SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-02111 |
| | § | |
| HESS CORPORATION, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Hess Corporation ("Hess"), Sean Moore, and Dylan Longaker (collectively "Defendants") have filed a Motion for Summary Judgment. (Doc. No. 42.) After considering the motion, response and reply thereto, and the applicable law, the Court finds that the motion must be granted in part and denied in part.

### I. BACKGROUND

This is an employment discrimination case. Plaintiff Anthony B. Smith has brought claims under 42 U.S.C. § 1981 for discrimination, retaliation, and creation of a hostile work environment, as well as under a negligence theory. (Doc. No. 39.)

The parties dispute a number of details in this case, although they agree that Mr. Smith worked at Hess during two periods: from July 2012 to March 2013, and from June 2013 to approximately October 1, 2013. (Doc. No. 42 at 6-7). During both periods, Mr. Smith worked as a contract employee in the position of Utility Worker, which involved sweeping, mopping and scrubbing floors, rotating stock, and maintaining the coolers and freezer. (*Id.* at 4; Smith Deposition, Doc. No. 42-1 at 84:1-2.) Based on his initial interview with Defendants Moore and Longaker (who became his supervisors), Mr. Smith formed the impression that he would be hired as a full-time cook in Hess' culinary department after three or four months as a contract

1

employee. (Doc. No. 42-1 at 84:3-21.) Prior to joining Hess, Mr. Smith had earned a certification in culinary arts and had worked intermittently as a cook since 2002. (Smith Deposition, Doc. No. 47-A at 29:7; Smith Resume, Doc. No. 42-3E.)

Mr. Smith is African-American and obese. (Doc. No. 47 at 2.) He believes he was discriminated against because of his race and disability, although only the race-based claims remain pending in this suit. Mr. Smith says that Mr. Moore and Mr. Longaker repeatedly called him a "slow, fat, slow black man." He also thinks Mr. Moore referred to him as a "nigger." He heard Mr. Moore use the term when no one besides Mr. Smith was nearby, but Mr. Smith is not certain the comment was about or directed to him. (Doc. No. 47-A at 200:5-201:12.)

The parties emphasize two incidents in 2012. First, in August, Mr. Smith was given a rack of meat that he needed to cut within 30 minutes. Another employee tried to help Mr. Smith cut the meat, and Mr. Moore "got mad" and "came over there and slammed the knife in the cutting board because [Mr. Smith] was being too slow at cutting the meat." Mr. Moore told him he needed to work faster and was not performing well. (Doc. No. 42-1 at 92:4-95:8.) Second, on November 28, 2012, Mr. Smith approached Mr. Longaker about full-time employment, as Mr. Smith had been working at Hess for more than four months and expected to be promoted to a cook position. Mr. Longaker told Mr. Smith that he did not foresee full-time employment in his future and that if he "felt this was a bullshit job, maybe [he] should just quit and he would terminate [Mr. Smith] just for asking him that if wasn't so close to Christmas." (Doc. No. 42-1 at 102:1-23.) Mr. Smith stated that, during both the August and November conversations, his supervisors called him a "slow black man." (Smith Affidavit, Doc No. 47-B ¶¶ 5-6.)

Mr. Smith did not report either of these incidents until January 2013, when he called Hess' hotline. Mr. Smith learned how to place his grievance by searching for a number on

Google, calling Hess' New York office, and then being referred to the hotline. (Doc. No. 47-A at 85:17-23.) He claims he never received a copy of Hess' employment and reporting policies and procedures. (Doc. No. 47-A at 85:17-23.) Mr. Smith anonymously reported both events/conversations. Although Mr. Smith believed the incidents were tied to both his race and obesity, he only "tied [the November conversation] into his race" during the hotline call. (Doc. No. 47-A at 103: 6-104:16.)

Between December 2012 and March 2013, Mr. Smith claims he was given the additional tasks of scrubbing the front and back floors and taking out the garbage. The additional tasks added 30-35 minutes to his workday. (Doc. No. 47-A at 114:14-24; 115:24) On March 5, 2013, Mr. Smith again inquired about a full-time cook position, and Mr. Moore responded that Mr. Hess was "too slow, fat, and those jobs were reserved for, basically, Caucasian, not fat—not fat black men." (Doc. No. 42-1 at 121:6-13.) Mr. Smith did not report that conversation to Human Resources or anyone else at Hess. (Doc. No. 42-1 at 124:10-125:3.) Shortly thereafter, Mr. Smith left his employment at Hess.

In June 2013, Mr. Smith returned Hess, after Mr. Longaker contacted him and invited him to return as a contract employee. (Doc. No. 42-1 at 136:3-138:2.) Mr. Smith expected to be considered for a full-time position when Hess' hiring freeze was lifted. (Doc. No. 42-1 at 141:2-15.) Mr. Smith's job duties during his second term were identical to the first, other than also making pizza dough each day. (Doc. No. 42-1 at 142:6-17.) Mr. Smith reports that, during this period, Mr. Moore would occasionally slam dishes directly next to him while Mr. Smith was unloading trays and plates from a conveyor belt in the dish room. Mr. Smith claims that Mr. Moore also slammed down plates in close proximity to two other African American employees. (Doc. No. 47-A at 144:23-145:14, 147:1-148:5.)

Around October 1, 2013, Mr. Smith asked the Manger of the Food Services Department about full-time employment, and was told that there was a hiring freeze and that he "was too fat and too slow." (Doc. No. 42-1 at 151:3-15; Doc. No. 47-B ¶ 10.) Shortly before that date, Mr. Smith learned from a colleague that contract employee Erano Ruiz had been offered a full-time chef position. (Doc. No. 47-A at 148:14-150:20, 189:8-24.) Defendants maintain that Mr. Ruiz was hired to the Sous Chef 1 position in early 2014. (Doc. No. 42 at 9.) By that point, Mr. Smith was no longer working for Hess, as he left the company for a second time in early October 2013.

## II. LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The court can consider any evidence in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Crawford*, 234 F.3d at 902.

The party moving for summary judgment bears the burden of demonstrating the absence of a genuine dispute of material fact. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party meets this burden, the non-moving party must go beyond the pleadings to find specific facts showing that a genuine issue of material fact exists for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## III. ANALYSIS

Mr. Smith has raised claims of common law negligence and violations of 42 U.S.C. § 1981. Although claims pled under the Civil Rights Act of 1964 Title VII have already been dismissed, the Court may cite legal requirements of Title VII. "When used as parallel causes of action, Title VII and section 1981 require the same proof to establish liability." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404, n.2 (5th Cir. 1999) (citing *Bunch v. Bullard,* 795 F.2d 384, 387 n.1 (5th Cir.1986)).

### A. Discrimination Claims under 42 U.S.C. § 1981

When considering a race discrimination claim, the Court uses the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

> Under this three-part scheme, a plaintiff must first present a prima facie case of discrimination. A plaintiff satisfies this initial burden by showing that (1) he belongs to a protected group; (2) he was qualified for the position sought; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class. If the plaintiff can present a prima facie case, the burden shifts to the defendant to rebut the plaintiff's case by demonstrating a legitimate, nondiscriminatory justification for its actions. If the defendant offers such a justification, the burden shifts back to the plaintiff, who can attempt to show that the defendant's proffered reason is simply a pretext for discrimination.

*Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003) (internal citations and quotation marks omitted).

It is undisputed that Mr. Smith, as an African-American, belongs to a protected group. Defendants argue that Mr. Smith cannot show the remaining elements of a prima facie case. Defendants first contend that Mr. Smith never sought a position because he never explicitly applied for a full-time chef role. The parties also disagree about what adverse employment action, if any, occurred. Defendants characterize the adverse employment action as a failure to promote or hire Mr. Smith to a full-time chef position; Mr. Smith says the adverse action also

included assigning additional menial duties, which should be viewed as a demotion. Finally, the parties dispute whether Mr. Smith can be considered "replaced" when he voluntarily left his position.

Mr. Smith has raised claims under 42 U.S.C. § 1981 for three separate acts of wrongdoing by Defendants: failure to hire, creation of a hostile work environment, and retaliation. The Court discusses each in turn.

1. **Failure to Hire/Promote**

"An employee presents a prima facie case of discrimination in a failure to promote case by demonstrating four elements: (1) that the employee is a member of the protected class; (2) that he sought and was qualified for the position; (3) that he was rejected for the position; and (4) that the employer continued to seek or promoted applicants with the plaintiff's qualifications." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004).

Given that Hess twice hired Mr. Smith for a utility position, the failure to hire claim must stem from Hess' failure to hire him to the role of a full-time chef. Defendants argue that Mr. Smith fails on the first element because he never sought the position in question, the Sous Chef 1 position ultimately filled by Mr. Ruiz. Mr. Smith responds that, although he did not apply for the Sous Chef 1 role, he made known his desire to work as a full-time chef. He maintains that he "inquired several times for the [chef] position and on each occasion was told that there was a hiring freeze. Because Hess modus operandi for bringing in employees was ad hoc, it cannot claim that it had a procedure for seeking employment, and has not specifically delineated how the Plaintiff failed to apply for the position." (Doc. No. 47 at 11.)

Courts outside of this circuit have excused plaintiffs in discrimination actions "from applying for promotions if the "*job opening was not officially posted* or advertised *and* either the

plaintiff had no knowledge of the job from other sources until it was filled, or the employer was aware of the plaintiff's interest in the job notwithstanding the plaintiff's failure to make a formal application." *Lockridge v. Bd. of Trustees of Univ. of Arkansas*, 315 F.3d 1005, 1011 (8th Cir. 2003) (quoting *Chambers v. Wynne School Dist.,* 909 F.2d 1214, 1217 (8th Cir.1990)) (emphasis in original). *See also Bennett v. Quark, Inc.*, 258 F.3d 1220, 1228 (10th Cir. 2001) (overruled on other grounds) ("While the law does not require that a plaintiff formally apply for the job in question, the law does require that the employer be on specific notice that the plaintiff seeks employment . . . .") (internal citation and quotation marks and omitted). Some courts have held that that "an employer cannot be faulted for failing to promote an employee who did not apply for the sought-after position, unless the employer's discriminatory practices deterred plaintiff from applying." *Cannon v. City of S. Bend, Indiana*, No. 3:16-CV-156-TLS, 2016 WL 7048896, at *2 (N.D. Ind. Dec. 5, 2016).

The Court finds *Lockridge* instructive. There, the Eighth Circuit announced: "an employee who does not formally apply must make every reasonable attempt to convey his or her interest in the job to the employer before he or she may prevail on a discrimination claim." 315 F.3d 1005, 1011 (8th Cir. 2003) (internal citation and quotation marks omitted). Mr. Smith has provided evidence showing that he repeatedly made his interest in a full-time chef position known to his supervisors, as late as October 2013. Viewing the evidence in the light most favorable to Mr. Smith, it appears that Mr. Ruiz was offered a position in October 2013, when Mr. Smith was told a hiring freeze was still in effect. The Court finds it plausible that, because Defendants never gave Mr. Smith reason to believe they had lifted the hiring freeze, Mr. Smith could not be expected to apply for a specific position, and his stated desire to become a full-time chef was the most reasonable attempt to convey his interest. *See Smith v. Home Depot U.S.A.,*

*Inc.*, 102 F. Supp. 3d 867, 876 (E.D. La. 2015 (assuming plaintiff actively sought all positions in area because she told employer she wanted to be considered for all openings within certain geographic area). It a disputed question of fact as to whether Mr. Smith inquiries show that he made every reasonable attempt to convey interest in the job, and thus whether he sought the full-time chef position.

The Court must next consider the remaining elements of Mr. Smith's prima facie case. *See Davis*, 383 F.3d at 317. For the purposes of this claim, the Court assumes, without deciding, that Mr. Smith sought and was qualified for a chef position. As Hess hired another person for the Sous Chef 1 role, this would constitute a "rejection" of Mr. Smith. Hess sought and/or hired Mr. Ruiz, who is not a member of Mr. Smith's protected class, as a full-time chef. The Court thus finds that Mr. Smith has presented a prima facie case for his failure to hire claim.

However, Defendants rebut Mr. Smith's claim with their legitimate, nondiscriminatory reason for not hiring him as a chef: Mr. Ruiz was a more qualified candidate. *See Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (if plaintiff makes out a prima facie case, the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff). Defendants stand by their decision not to promote Mr. Smith (while reiterating that he never actually applied for the Sous Chef 1 position) because he was an unimpressive employee and Mr. Ruiz had better credentials and performance. Defendants state that Mr. Smith was clumsy, inefficient and slow, had no sense of ergonomics, and lacked relevant experience in facilities similar to Hess. (Doc. No. 42-2 ¶ 10; Doc. No. 42-3 ¶ 11.) In contrast, Defendants describe Mr. Ruiz as someone with "an aptitude and talent for cooking and was a seasoned veteran of the kitchen" and had "thirty years of culinary experience in high end hotels servicing international and executive customers." (Doc. No. 42-2 ¶ 9; Doc. No. 42-3 ¶ 10.)

8

As Defendants have provided a legitimate, nondiscriminatory reason not to hire Mr. Smith, "the burden then shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for unlawful discrimination." *Nathaniel v. Mississippi Dep't of Wildlife, Fisheries & Parks*, 411 F. App'x 687, 689–90 (5th Cir. 2010). *See also Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004).

Mr. Smith contests Defendants' characterizations of both Mr. Ruiz and himself. He argues that Mr. Ruiz's purported experience in high-end hotels was irrelevant for the cooking needed at the Hess facility, whereas Mr. Smith had worked in environments more similar to the Hess restaurant. (Doc. No. 47 at 10, 12.) Moreover, "Mr. Smith was not even allowed to cook so that his aptitude and talent for cooking could be observed." (Doc. No. 47 at 9, 12.) Mr. Smith also questions Mr. Ruiz's credentials, arguing that his college degree in culinary arts is unverified; Mr. Smith, on the other hand, made his Associate Degree in Culinary Arts known to Hess. (Doc. No. 47 at 9-10.) All of these factors lead Mr. Smith to the conclusion that hiring Mr. Ruiz based on his qualifications is pretext for discriminatory animus.

"In determining whether the employer's stated reason is false, the trier of fact may not disregard the defendant's explanation without countervailing evidence that it was not the real reason for the discharge. Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of a doubt is insufficient." *E.E.O.C. v. Louisiana Office of Cmty. Servs.*, 47 F.3d 1438, 1443–44 (5th Cir. 1995) (citing *Elliott v. Group Medical & Surgical Serv.,* 714 F.2d 556, 562 (5th Cir.1983)). Mr. Smith's evidence at most casts a shadow of a doubt, and cannot support an inference of falsity regarding Defendants' stated reason for hiring Mr. Ruiz. It does not strike the Court as suspect that a chef's trained palate and natural aptitude in the kitchen would serve him well in a

restaurant serving Hess employees and their business associate guests, even if it is not the finest dining facility. (Doc. No. 47-E at 54:8-25.) Additionally, Mr. Moore described Mr. Smith as inefficient and slow with respect to his prep work duties, e.g. peeling vegetables, which would be relevant to considering him as a full-time cook. (Doc. No. 47-E at 38:16-39-19.) Defendants have stated a basis to determine that Mr. Ruiz was a more qualified person for the Sous Chef 1 role, and Mr. Smith has not provided evidence to support a finding of pretext. *Cf. Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (plaintiff can prove that employer's proffered reasons are pretextual by showing unsuccessful employee was clearly better qualified than employees who are selected). The Court grants summary judgment for Defendants for the failure to hire claim.

### 2. Hostile Work Environment

Mr. Smith overcomes summary judgment on his hostile work environment claim. To establish a race discrimination claim based on a hostile work environment, Mr. Smith must prove that he: "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir.2002)). "[W]here the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff employee needs to satisfy only the first four of the elements listed above." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

Defendants contend that Mr. Smith has failed to satisfy all but the first element of the

hostile work environment claim. They argue that Mr. Smith has failed to show he was subjected to unwelcome harassment. Defendants also maintain that any conduct Mr. Smith complained of was unrelated to his race, and was neither severe nor pervasive. The Court disagrees.

Courts look at all the circumstances when determining if an environment is hostile or abusive. They may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Mr. Smith cites several instances that could create a hostile environment. Specifically, Mr. Smith alleges that his supervisors repeatedly called him a "slow, fat, slow black man"; Mr. Smith believes his supervisor referred to him as a "nigger"; Mr. Moore spoke to him in a condescending manner; and Mr. Moore slammed dishes directly next to Mr. Smith and other African-American employees in an intimating manner. (Doc. No. 47-B at 2; Doc. No. 47-A at 144:23-145:14, 147:1-148:5, 200:5-201:12.) These acts were regular, physically threatening, and potentially interfered with Mr. Smith's performance. The fact that other African-American employees were allegedly subjected to the same treatment may further indicate that the conduct was unwelcome harassment. *See Hernandez*, 670 F.3d at 653 (treatment of other women may be relevant to plaintiff's sex discrimination claim). A jury should be able to consider all of these facts to determine if this conduct constitutes harassment.

Mr. Smith has also presented testimony through his deposition and sworn affidavit[1] that

---

[1] Defendants argue that the Court should disregard Mr. Smith's affidavit (Doc. No. 47-B), as it contradicts statements made earlier during his deposition. They suspect the later filed affidavit is an attempt to "manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without explanation." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). The Fifth Circuit has reasoned that "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary

shows racial animus. The possible racial epithet, physical intimidation, and persistent references to Mr. Smith's as a "slow black man" can be can be construed as related to Mr. Smith's race.

The fourth element of a hostile work environment claim requires a plaintiff to show "the harassment complained of affected a term, condition, or privilege of employment." *See Hernandez*, 670 F.3d at 651. "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment . . ., which includes requiring people to work in a discriminatorily hostile or abusive environment. . . . When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. 17, 21, (1993) (internal citations and quotation marks omitted). The test is both objective and subjective: the conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment" and the victim must "subjectively perceive the environment to be abusive." *Id.* The objective hostility of environment is discussed above. The subjective evidence presented in this case points in favor of both parties' arguments: on the one hand, Mr. Smith describes feelings of fear and shame because of the treatment by his supervisors; on the other, he chose to return to Hess for a second term and remained interested in a full-time position. (Doc. No. 47-A at 71:18-72:10; Doc. No. 42-1 at 136:3-138:2, 151:3-15.) In light of these disputed and material questions of fact, the Court cannot rule on Mr. Smith's hostile work environment claim.

---

judgment as a procedure for screening out sham issues of fact." *Id.* Although Mr. Smith's affidavit adds details beyond what he provided in his deposition, the affidavit statements are more appropriately viewed as a supplement to the deposition testimony, rather than a replacement. A trier of fact may view the specific discrepancies between Mr. Smith's affidavit and deposition as significant, but those differences are not inherently contradictory. The Court will consider Mr. Smith's affidavit at the motion for summary judgment stage, and leave the trier of fact to gauge credibility.

Finally, Defendants contend they may apply the *Ellerth/Faragher* affirmative defense. Under the Supreme Court decisions in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), "an employer may be *vicariously* liable for its employees' creation of a hostile work environment." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2441 (2013). The Supreme Court reasoned that "[w]hen a person with supervisory authority discriminates in the terms and conditions of subordinates' employment, his actions necessarily draw upon his superior position over the people who report to him, or those under them, whereas an employee generally cannot check a supervisor's abusive conduct the same way that she might deal with abuse from a co-worker." *Faragher*, 524 U.S. 775 at 802–04.

While creating potential liability for an employer, *Ellerth* and *Faragher* also provide an affirmative defense to liability. "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765. Defendants argue that Mr. Smith did not take advantage of corrective opportunities provided by Hess, as he did not report any incidents other than his anonymous call to the company hotline. (Doc. Nos. 42 at 17; 42-1 at 86:3-88:10.) Mr. Smith counters that he was not informed of corrective opportunities and/or company policies for reporting harassment. (Doc. Nos. 47 at 19; 47-A at 85:21-23.) The Court finds that it is a question of fact as to whether Mr. Smith was aware of Hess' policies and failed to follow them, or whether his call to the hotline was a reasonable attempt to report the alleged abusive environment. Although Defendants may invoke the *Ellerth/Faragher* affirmative defense at trial, a jury must decide if it applies. Thus, the Court denies summary judgment for Defendants on Mr. Smith's hostile work environment claim.

### 3. Retaliation

Mr. Smith has also raised a retaliation claim. A prima facie retaliation claim requires the plaintiff to "demonstrate that: (1) [he] engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (citing 42 U.S.C. § 2000e–3(a); *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 348 (5th Cir.2007)).

Mr. Smith argues that he engaged in the protected activity of inquiring about a full-time chef position. Mr. Longaker then immediately retaliated against him by threatening him with termination. Moreover, instead of allowing him to perform as a cook, Defendants relegated him to a cleaning role. (Doc. No. 47 at 19-22.) Defendants argue that Mr. Smith's inquiry was not a protected activity, and the Court agrees.

The Civil Rights Act of 1964 Title VII § 704(a) makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. 2000e-3(a). Mr. Smith does not refer to any charge, etc. as part of his retaliation claim, and his inquiry about a full-time chef position does not constitute opposition to an unlawful employment practice. For an act of opposition to qualify as a protected activity, "the relevant question is . . . whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an *unlawful* discriminatory manner." *Yount v. S & A Rest. Corp.*, 226 F.3d 641 (5th Cir. 2000). *See also Gordon v. Acosta Sales & Mktg., Inc.*, 622 F.

App'x 426, 431 (5th Cir. 2015) (claim fails because based on personal grievance rather than illegal discrimination). Although Mr. Smith may have thought his failure to be promoted was related to race discrimination, his inquiry did not indicate to his supervisors that he was opposing discriminatory conduct. Therefore, the act that Mr. Smith cites as the basis of his retaliation claim was not a protected activity. The Court must grant summary judgment for Defendants on Mr. Smith's retaliation claim.

### B. Negligence

Mr. Smith has pled a claim for negligence against Hess, arguing that it breached its duty to protect Mr. Smith from the harassment posed by his supervisors. (Doc. No. 39 ¶ 49.) Defendants raise four objections to Mr. Smith's negligence claims: (1) the claim is barred by a two-year statute of limitations; (2) the claim is precluded by the Texas Worker's Compensation Act; (3) the claim is precluded by the Texas Commission on Human Right Act (TCHRA); and (4) Mr. Smith did not plead any facts that trigger a claim for negligence. (Doc. No. 42 at 20-22.)

The Court need only discuss preemption under the TCHRA, which bars the negligence claim. Courts have held that "[w]hen the facts underlying a plaintiff's negligence claims are entwined with facts that would give rise to a harassment claim under the TCHRA, the TCHRA is the exclusive state-law remedy for the harassment." *Brandon v. Sage Corp.*, 61 F. Supp. 3d 632, 650 (W.D. Tex. 2014), *aff'd*, 808 F.3d 266 (5th Cir. 2015) (citing *Waffle House, Inc. v. Williams,* 313 S.W.3d 796, 799 (Tex.2010)). In *Brandon*, although the plaintiff did not plead a claim under the TCHRA, the state statute preempted any state common law claim stemming from the same set of facts.[2] Similarly, Mr. Smith's negligence claim arises out of the same set of facts as his

---

[2] Mr. Smith argues that he suffered a "highly personal violation" that falls into an exception of any Title VII or § 1981 (or TCHRA) preemption (Doc. No. 47 7at 24-25.) The Ninth Circuit found that "torts which constitute highly personal violations beyond the meaning of

15

hostile work environment claim under § 1981. Like in *Williams*, the root of Mr. Smith's negligence claim "does not arise from separate, non-harassment conduct; it is premised on the same conduct that the TCHRA deems unlawful." 313 S.W.3d 796, 813 (Tex. 2010). Although Mr. Smith did not raise a claim under the TCHRA, this would have been the only appropriate state remedy to address such conduct. Mr. Smith may seek to hold Defendants liable for their alleged harassing conduct through his remaining § 1981 claim. The negligence claim must be dismissed.

IV. **CONCLUSION**

For the aforementioned reasons, the Court grants summary judgment on all claims other than Mr. Smith's claim under 42 U.S.C. § 1981 for the creation of a hostile work environment. Defendants' motion for summary judgment (Doc. No. 42) is therefore **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on the 18th of May, 2017.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

'discrimination are separately actionable" from Title VII or § 1981 claims. *Otto v. Heckler*, 781 F.2d 754, 756–57 (9th Cir.), *amended*, 802 F.2d 337 (9th Cir. 1986) (internal quotation marks omitted). Mr. Smith argues that his supervisors insults of his appearance, race and work performance went beyond the meaning of discrimination. The Court finds this argument intriguing, but nonetheless determines that, because Mr. Smith's negligence claim also stems from harassing conduct, the claim should be heard under § 1981 or the TCHRA. The Court may consider future arguments that tort claims based on highly personal violations are distinguishable from harassment outlawed by § 1981, Title VII or the TCHRA.